JOHN MIDDLETON,

Plaintiff,

VERSUS

THE CITY OF NEW YORK; ROBERT RICHARD, Individually and as commanding officer of the 70th Precinct; DETECTIVE LYONS, Individually and as a Detective of the 70th Precinct; EDWARD MAHONEY, Arresting Detective Individually and as a Detective of the 70th Precinct, and his partner, ANGELO BARONE, Individually and as a Detective of the NYPD Special Victims Division, Sex Offenders Monitoring Unit; CLAIRE M. LUCADOMO, Individually,

Defendants.

———————

MEMORANDUM AND ORDER
June 19, 2006

———————

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff John Middleton brings this action, pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, for money damages, injunctive relief and declaratory relief, claiming causes of action under the Fourth and Fourteenth Amendments.

Defendants City of New York, Inspector Robert Richard, Detective David Lyons, Detective Edward Mahoney and Detective Angelo Barone (collectively, "City defendants"), and individual defendant Claire Lucadomo, move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the foregoing reasons, City defendants' motion is granted in part and denied in part and defendant Lucadomo's motion to dismiss the federal claims is granted. The Court declines to exercise jurisdiction over the remaining state claims against defendant Lucadomo.

## I. BACKGROUND

### A. FACTS

The following facts are derived from plaintiff's complaint, and taken as true for the purposes of this motion.

On or about January 16, 2004, plaintiff received a telephone call from defendant Detective Lyons who informed plaintiff that a complaint was filed against him by defendant Lucadomo. (Amended Complaint (hereinafter "Am. Compl.") ¶¶ 19, 27.) Lucadomo had filed a report alleging that plaintiff was harassing her and stalking her. (*Id.* ¶ 19.) The charge was based upon two or more phone calls from a cell phone to Lucadomo, who did not want to be called. (*Id.* at App. H-2.) Lyons stated that, based upon Lucadomo's statements and his own investigation, he was going to arrest plaintiff and requested that he turn himself in. (*Id.* ¶ 20.) Plaintiff denied the allegations and explained that Lucamodo is the sister of James Nielson, who allegedly abused plaintiff's children. (*Id.* ¶ 21.) Plaintiff, with others, engaged in the passing out of wanted flyers with Nielson's photo. (*Id.* ¶ 25.) Plaintiff alleged that defendant Lucadomo had a history of filing false reports and filed the report against plaintiff to protect her brother, Nielson, and to assist plaintiff's ex-wife "in a conspiracy to deprive plaintiff of custody of his children." (*Id.* ¶¶ 25, 26.) Trooper Rhodunda, III, Pennsylvania State Police, who is not a party to this action, told plaintiff that defendant Lyons had called him several times with questions about plaintiff. (*Id.* ¶ 9.) Plaintiff, or Mr. Eisenstein,[1] acting on plaintiff's behalf, sent several letters to defendant Lyons, defendant Richard and Commissioner Kelly, asking that they review several court decisions and requesting that they "refrain from threatening other parties with arrest without 'due diligence' in [their] investigations." Plaintiff did not receive any responses. (*Id.* ¶ 31.) On March 20, 2004, Mr. Eisenstein received a phone call from defendant Lyons, who informed him that his Captain was upset by the letters and ordered him to arrest plaintiff.[2] (*Id.* ¶ 33.)

On March 22, 2004, two plain clothes police officers, who identified themselves as members of the warrant squad, knocked on plaintiff's door and requested entry. (*Id.* ¶ 34.) The officers inquired about plaintiff's ex-girlfriend. (*Id.*) Plaintiff spoke to the officers with the safety chain on his door, and after a period of time, the detectives left without making an arrest. (*Id.*) Two months later, on May 21, 2004, at 1:00 a.m., police officers broke into plaintiff's house by kicking open the door with their guns drawn and arrested plaintiff without a warrant. (*Id.* ¶ 9.) One officer allegedly placed a gun to plaintiff's stomach. (*Id.*) As a result of the arrest, plaintiff suffers from high blood pressure, fatigue, mental and emotional stress, and "great bodily injury to his heart." (*Id.* ¶¶ 39, 44, 57, 60, 68, 75, 78.) After being placed under arrest, plaintiff was handcuffed to a hospital bed for five days and received a bedside arraignment on May 25, 2004. (*Id.* ¶

---

[1] Mr. Eisenstein's connection to the events underlying this action is not entirely clear. However, it seems that Mr. Eisenstein has acted on plaintiff's behalf on numerous occasions as it relates to the events that are the subject of this lawsuit.

[2] From the Complaint, it appears that the "Captain" who allegedly gave the order to arrest plaintiff was Lieutenant Palestra. (*See* Am. Compl. at ¶ 8.)

2

34.) Plaintiff was charged with Aggravated Harassment in the Second Degree pursuant to N.Y. PENAL LAW § 240.30(2). (City Defendants' Mem. of Law in Support of Their Mot. to Dismiss (hereinafter "City Def. Memo.") at Ex. C.) The criminal proceedings against plaintiff were subsequently dismissed on January 7, 2005. (Pl.'s Mem. of Law in Opp'n to City Defs' Mot. to Dismiss (hereinafter "Pl.'s Opp.") ¶ 6.)

### B. PROCEDURAL BACKGROUND

Before this Court are two motions to dismiss. The first motion was filed on behalf of the City of New York, Detective David Lyons, Inspector Robert Richard, Detective Angelo Barone and Detective Edward Mahoney.[3] The second motion was filed individually on behalf of defendant Claire Lucadomo. The motions were originally noticed as motions to dismiss and referred to Magistrate Judge Bloom for a Report and Recommendation, pursuant to 28 U.S.C. § 626(b). Upon Order dated May 31, 2005, Magistrate Judge Bloom converted the motions into motions for summary judgment pursuant to Fed. R. Civ. P. 56, giving notice, and giving plaintiff an additional thirty days to supplement his opposition to defendants' motions. The case was subsequently re-assigned to the undersigned and the Order for a Report and Recommendation was vacated upon Order by this Court dated February 24, 2006. Oral argument was held on April 18, 2006. At oral argument, all parties agreed that it was appropriate to convert the motion back to a motion to dismiss. (*See* Oral Arg. Tr. at 5-8.) After oral argument, all parties were given an opportunity to supplement their briefing.

---

[3] Plaintiff voluntarily withdrew his claims against named defendants Raymond Kelly and Lieutenant Palestra.

## II. STANDARD OF REVIEW

### A. MOTION TO DISMISS

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 145 (2d Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 106 (2d Cir. 2005).

Because plaintiff is proceeding *pro se*, the Court "must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted). "This is especially true when dealing with *pro se* complaints alleging civil rights violations." *Weixel,* 287 F.3d at 145-146 (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

3

III. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983.[4]

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress of the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (false arrest) and citing *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984) (malicious prosecution)).

A. FALSE ARREST/FALSE IMPRISONMENT[5]

Defendants move to dismiss the false arrest claims against defendants Lyons, Barone, and Mahoney, stating that they had probable cause to arrest.

The Second Circuit has established that "[t]he existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" *Weyant*, 101 F.3d at 852 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* Furthermore, "[t]he validity of an arrest does not depend on an ultimate finding of guilt or innocence." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)). "Rather, the court looks only to the information the arresting officer had at the time of the arrest." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Under the collective knowledge doctrine, if defendant Lyons had probable cause to arrest, the actual arresting officers, defendants Barone and Maloney, are deemed to have probable cause. *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) ("The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all.'") (quoting *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983)). Moreover, on a motion to dismiss, "[t]he question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852.

---

[4] The individual city defendants do not at this time move as to plaintiff's excessive force or unreasonable seizure claims. *See* City Def. Memo. at 11 n.6 ("To the extent the plaintiff's Amended Complaint makes allegations regarding the actual apprehension of plaintiff, i.e., that defendants 'broke into his home' and placed him under arrest, defendants are not moving to dismiss those claims at this time.").

[5] "A claim for false arrest is a type of claim for false imprisonment." *Coyle v. Coyle*, 354 F. Supp. 2d 207, 211 (E.D.N.Y. 2005) (citing *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996)).

4

Defendants argue that probable cause to arrest existed based on the fact that Ms. Lucadomo filed a complaint. (Def. Memo. at 8.) "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). According to plaintiff's complaint, Detective Lyons advised Mr. Eisenstien, in conversations prior to the arrest, that Ms. Lucadomo was alleging that plaintiff was harassing her because he had called her from a cell phone on two occasions and that she did not want to receive his calls. (Am. Compl. ¶¶ 19, 27, App. H-2.) The criminal complaint filed after the arrest adds that Ms. Lucadomo stated that plaintiff held himself out to be a police officer and threatened to arrest her. (Def. Memo. at Ex. C, Criminal Court Complaint.[6]) The criminal complaint also stated that plaintiff threatened to go to Ms. Lucadomo's residence to find out if she was harboring her brother. (*Id.*) Defendants argue that the victim's complaint, coupled with Lyons' investigation, gave City defendants probable cause to arrest the plaintiff.

Plaintiff, however, argues that through his correspondence to Lyons and through Lyons's own investigation, defendants were put on notice that there was doubt as to Ms. Lucadomo's veracity. More specifically, the complaint states that, when Detective Lyons contacted plaintiff on January 16, 2004, and advised him that defendant Lucadomo had made certain allegations against him, plaintiff denied all of Lucadomo's allegations. (Am. Compl. ¶¶ 19-21.) Plaintiff also advised Lyons that Lucadomo was the sister of an individual who had an outstanding warrant for sexual molestation, and that this individual was abusing plaintiff's minor children. (*Id.*) The complaint further alleges that, at some point, Plaintiff faxed a copy of the warrant issued for this individual to the Bronx NYPD Warrant Squad. (*Id.* ¶ 13.) The complaint also states that, later in January 2004, a letter was provided to the NYPD suggesting that Ms. Lucadomo "may not be credible." (Am. Compl., Ex. A-1.) In particular, according to the complaint, the letter asserts that she has alleged other similar incidents in 1996 in court papers, but did not file any police complaints. The letter further suggests that she may be making false allegations against Plaintiff and harassing him because of his efforts to assist in the apprehension of her fugitive brother. (Am. Compl., Ex. A-1.) Several other similar letters were also allegedly sent to other supervisors in the NYPD.

The complaint further alleges that, on March 20, 2004, Lyons contacted Mr. Eisenstein. According to the complaint, Lyons acknowledged receiving the letters and stated that his Captain was upset by the letters and ordered that Plaintiff be arrested. (Am. Compl. ¶ 33.) On March 22, 2004, two detectives allegedly showed up and asked him about a complaint he had made against an ex-girlfriend that was closed three years ago. The detectives then left and made no arrest. (Am. Compl. ¶ 34.) Plaintiff alleges that another two months went by and, on May 21, 2004, officers broke into his apartment

---

[6] Pursuant to Fed. R. Evid. 201(b), "a court may take judicial notice of a public record ." *Roe v. Johnson*, 334 F. Supp. 2d 415, 420 (S.D.N.Y. 2004) (citing *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000)).

5

without a warrant and arrested him for the alleged harassment of Lucadomo months earlier.

Based on the facts alleged above, Plaintiff is urging, in substance, that the Court conclude: (1) that the police knew that there were issues with Lucadomo's credibility based on the information that he provided, combined with whatever the police discovered through their own investigation and, therefore, the police lacked probable cause; (2) that the doubts by the police as to Lucadomo's credibility, and the absence of any probable cause, are demonstrated by the substantial length of time that passed between her allegations and his arrest, including an intervening visit to Plaintiff during which the police did not arrest him, as well as their other subsequent actions in connection with the arrest; and (3) that the police were motivated to arrest him because of his letters complaining about the police, rather than based on any probable cause, as demonstrated by the alleged comment by Lyons to Eisenstein.

The Court concludes that the false arrest claim survives defendants' motion to dismiss. As a threshold matter, although defendants rely upon Ms. Lucadomo's sworn statement to establish the existence of probable cause, that statement cannot be the basis for probable cause because it was signed by Lucadomo on June 1, 2004, which is over one week after the arrest on the morning of May 21, 2004. *See Daniels v. City of New York*, 03 Civ. 0809 (GEL), 2003 U.S. Dist. LEXIS 19765, at *11 n.4 (S.D.N.Y. Nov. 5, 2003) (finding sworn complaint "irrelevant to the probable cause analysis . . . because it occurred after the arrest"); *see also Danielak v. City of New York*, No. 02-CV-2349 (KAM), 2005 U.S. Dist. LEXIS 40901, at *24 n.8 (E.D.N.Y. Sept. 26, 2005) (same). Similarly, the criminal complaint itself was signed on May 22, 2004 – the day after the arrest – and, therefore, does not necessarily reflect what information was available to the police at the time of the arrest to establish probable cause. As noted above, there are some references in the plaintiff's complaint that bear on what the police knew about the alleged harassment, prior to making the arrest. In particular, according to the complaint, plaintiff knew from Detective Lyons in the months preceding the arrest that Lucadomo was claiming harassment based on two unwanted telephone calls he made to her. (*See* Am. Compl. ¶¶ 19, 27, App. H-2.) However, beyond these general references, there is no specific information in the plaintiff's complaint which establishes the details regarding what information was available to the police at the time of the arrest from Lucadomo, or any other source, to establish probable cause for the arrest. *See Caidor v. M&T Bank Corp.*, 5:05-CV-297 (FJS/GJD), 2006 U.S. Dist. LEXIS 22980, at *19 (N.D.N.Y. March 27, 2006) (denying motion to dismiss on false arrest claim where "[i]t is . . . impossible to derive from the complaint exactly what information was available to the officers . . . at the time of Plaintiff's arrest for trespassing"). Therefore, the plaintiff's complaint does not contain sufficient information about Ms. Lucadomo's statement to the police prior to the arrest for the Court to conclude that probable cause existed at the time of arrest as a matter of law.

In any event, even assuming *arguendo* that the information contained in the criminal complaint from Lucadomo was available to the police prior to the arrest, it would still not be sufficient to warrant a dismissal of the false arrest claim under the motion to dismiss standard. The Court recognizes that an

officer's personal, subjective opinion as to whether there is probable cause to arrest is irrelevant; rather, probable cause is analyzed objectively. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998) ("Even less savory ulterior motives are irrelevant as long as the facts available to the arresting officer satisfy the probable cause standard."). Moreover, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti*, 124 F.3d at 128; *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him."); *Cornett v. Brown*, 04 CV 0754 (DGT) (LB), 2006 U.S. Dist. LEXIS 22415, at *23 (E.D.N.Y. March 30, 2006) ("[W]hile an arresting officer may not disregard information known to him in making an arrest, he is not required 'to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest.'") (*quoting Jocks v. Tavernier*, 316 F.3d 128, 135-36 (2d Cir. 2003)).

However, a key question in the instant case on the issue of probable cause is whether there were circumstances known to the police at the time of the arrest that were sufficient to raise doubts as to the alleged victim's veracity and negate probable cause (even assuming *arguendo* it existed based on the victim's initial complaint alone). The defendants argue that the Court should infer that the delay in police action for many months represents careful police investigation, rather than being indicative of the absence, or negation, of probable cause. The defendants, however, are unable to point to anything in the amended complaint which provides a substantive explanation as to what the police uncovered during that four-month period.[7] Therefore, in this pre-discovery stage of this litigation, the facts surrounding the police investigation and its impact on the veracity of Lucadomo's complaint, and the inferences to be drawn from that investigation, are in dispute.[8]

---

[7] The amended complaint alleges that Detective Lyons called Trooper Rhodunda, III, in Pennsylvania, and asked questions about plaintiff. (Am. Compl., at ¶ 9); *see also* Letter by Mr. Eisenstein to Police, dated March 24, 2004 (Am. Compl., Ex. D-2) ("When I asked Det. Lyons if he had investigated all areas of this action, he said that he had. However, he would not disclose any information related to his investigation . . . .") The amended complaint, however, does not state what Lyons learned from that inquiry with the Pennsylvania police, or any other additional investigation that took place up to the time of arrest.

[8] In addition to the circumstances surrounding the alleged delay between the time the police received the information from Lucadomo and the time of arrest, there is also factual ambiguity as to how much time passed between the alleged harassment and Lucadomo's report to the police. Although the criminal complaint alleges that the harassment occurred on or about December 1, 2003, it is unclear when Lucadomo reported the harassment to the police. The amended complaint states that he learned of Lucadomo's allegations on January 16, 2004, from Detective Lyons. If Lucadomo waited approximately six weeks to report the alleged incident to the police, that delay could be

7

Accordingly, after a careful review of the complaint and drawing all inferences in plaintiff's favor from those alleged facts, the Court concludes that at this juncture there is insufficient basis to determine as a matter of law that the defendants had probable cause to arrest plaintiff. *See Caidor,* 2006 U.S. Dist. LEXIS 22980, at *19 (denying motion to dismiss because it is "impossible to derive from the complaint exactly what information was available to the officers . . . at the time of Plaintiff's arrest for trespassing, and whether they had any reason to question the veracity of the complaint that M & T Bank filed with them"); *Hyde v. Caputo*, No. 98-CV-6722 (FB) (ASC), 2001 U.S. Dist. LEXIS 6253, at *8 (E.D.N.Y. May 11, 2001) ("[plaintiff's] allegations contain a 'plausible interpretation' of events and thus 'a court *considering a motion to dismiss under Rule 12(b)(6)*' may not conclude that probable cause existed") (quoting *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 415 (2d Cir. 1999)). Accordingly, City defendants' motion to dismiss the false arrest claim on the basis of probable cause is denied.

---

a factor in evaluating whether there was probable cause to arrest. *See Cornett,* 2006 U.S. Dist. LEXIS 22415, at *25 (although there is no rule that requires that complaints be sworn or acted upon promptly, "[a] victim's delay in reporting a crime may, however, be a factor in evaluating the victim's credibility and, hence, the strength of the complaint in forming a basis for probable cause"); *Bullard v. City of New York*, 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) (concluding that, on a motion to dismiss a § 1983 claim for false arrest, victims' delay of several weeks in reporting that plaintiff allegedly slashed their tires, undermined their credibility for purposes of giving police probable cause to arrest).

B. MALICIOUS PROSECUTION

"'Because there are no federal rules of decision for adjudicating § 1983 actions that are based upon claims of malicious prosecution, [courts] are required by 42 U.S.C. § 1988 to turn to state law . . . for such rules.'" *Alicea v. City of New York*, No. 04-CV-1243 (RMB), 2005 U.S. Dist. LEXIS 28129, at *17 (S.D.N.Y. Nov. 15, 2005) (quoting *Conway v. Mt. Kisco*, 750 F.2d 205, 214 (2d Cir. 1984)). "A malicious prosecution claim under New York law requires the plaintiff to prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Jocks,* 316 F.3d at 136 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (internal quotation marks omitted)). In addition to the state law elements of malicious prosecution, "[t]o sustain a § 1983 malicious prosecution claim, there must be a seizure of other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the *Fourth Amendment*." *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (quoting *Singer,* 63 F.3d at 117).

City defendants argue that plaintiff failed to satisfy each element of the malicious prosecution claim. As to prong one, plaintiff does not claim City defendants initiated the action; rather, the Assistant District Attorney signed the accusatory instrument which was sworn to by Lucadomo. New York Criminal Procedure Law provides that "[a] criminal action is commenced by the filing of an accusatory instrument with a criminal court . . . ." N.Y. CRIM. PROC. § 100.05 (McKinney

8

2004). Here the individual City defendants (other than defendant Richard, who is addressed *infra*) are the police officers who merely effectuated the arrest. "The independent, discretionary actions of the [Kings County] District Attorney's Office served to break any causal connection between [City] [d]efendants and the prosecution commenced against [p]laintiff." *Stephenson v. Rosa*, 03 Civ. 8503, 2006 U.S. Dist. LEXIS 7390, at *8 (E.D.N.Y. Feb. 24, 2006). Plaintiff has not alleged any facts indicating that the defendant police officers deceived or unduly pressured the Kings County District Attorney or Lucadomo into filing the accusatory instrument; nor did plaintiff allege facts to indicate that the police officers were the complaining witnesses. Thus, it cannot be said that City defendants initiated the action. *See, e.g., Webster v. City of New York*, 333 F. Supp. 2d 184, 198 (S.D.N.Y. 2004) (denying summary judgment where the defendant police officers were the complaining witnesses).

Here, plaintiff has not alleged facts to indicate that the chain of causation should be broken. Defendants merely effectuated the arrest and, though the actual arrest allegedly violated constitutional rights, plaintiff has failed to allege facts that City defendants caused the accusatory instrument to be signed. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (holding that "the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment").

Because the Court finds that plaintiff fails to satisfy prong one of the malicious prosecution claim, the Court need not address the remaining prongs. Accordingly, plaintiff's claim of malicious prosecution against City defendants is dismissed.

C. CONSPIRACY

1. Conspiracy pursuant to § 1983

Plaintiff fails to set forth facts establishing a conspiracy. "In order to survive a motion to dismiss on a § 1983 conspiracy claim, the plaintiff must allege (1) an agreement between two or more state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Carmody v. City of New York*, No. 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 25308, at *16 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-35 (2d Cir. 2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Ciambriello*, 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); *see also Robbins v. Cloutier*, 121 Fed. Appx. 423 (2d Cir. 2005) (dismissing a § 1983 conspiracy claim as insufficient where plaintiff merely alleged that defendants "acted in a concerted effort" to agree "not to hire [p]laintiff and to inform others not to hire plaintiff"). "A plaintiff is not required to list the place and date of defendants meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (report and recommendation) (accepted by, in part, rejected by, in part, *Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) (quoting *Hoffman v. Halden*, 268 F.2d 280, 294-95 (9th Cir. 1959)). Here, the complaint alleges that "the police conspire[d] to harass" plaintiff because "defendant Lyons said that his Captain wanted Mr. Middleton arrested." (Am. Compl. ¶ 66.) The fact that

9

defendants' actions may have "violated plaintiff's civil and constitutional rights" (Pl. Opp. ¶ 16) is not evidence that there was an agreement and meeting of the minds to deprive plaintiff of his constitutional rights. *See Nat'l Cong. for Puerto Rican Rights by Perez v. City of New York*, 75 F. Supp. 2d 154, 168 (E.D.N.Y. 1999) (dismissing conspiracy claim for failure to allege a meeting of the minds).

Even assuming that the Captain stated that he wanted plaintiff arrested, plaintiff's allegation that there may have been a conspiracy is strictly conclusory. Furthermore, as City defendants correctly point out, members of a single entity, i.e., alleged co-conspirators who are employed by the same institutional defendant, cannot conspire together. *See Nat'l Cong. for Puerto Rican Rights*, 75 F. Supp. 2d at 168-69 ("'Where individual defendants are all employees of the institutional defendant, a claim of conspiracy will not stand.'") (quoting *Burrell v. City Univ. of New York*, 995 F. Supp. 398, 414 (S.D.N.Y. 1998)). To the extent plaintiff is alleging that defendant Lucadomo was involved in the conspiracy, that claim must fail as well. For a private actor to be considered acting under the color of state law, that private actor must be "'a willful participant in joint activity with the State or its agents.'" *See* Ciambriello, 292 F.3d at 325 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)) (citation omitted); *see also Fiske*, 401 F. Supp. 2d at 377 ("Communications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor."). "[A] private party who calls the police for assistance does not become a state actor unless the police were influenced in their choice of procedure or were under the control of a private party." *Fiske*, 401 F.Supp.2d at 377; *see also Alexis v. McDonald's Rest. of Mass., Inc.*, 67 F.3d 341, 345, 352 (1st Cir. 1995) (restaurant manager was not a state actor, although manager told the police officer she "would like [an unruly customer] to leave" and officer thereafter forcibly removed customer from restaurant, because there was no evidence that the officer substituted the manager's judgment for his own); *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1353 (7th Cir. 1985) (where no evidence of "concerted effort or plan" between a restaurant owner and police officer, owner was not a state actor simply because owner reported customers to officer and told officer where to find them and customers were subsequently arrested by police officer); *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § 1983"); *Johns v. Home Depot U.S.A., Inc.*, 221 F.R.D. 400, 404 (S.D.N.Y. 2004) (private party who calls for police assistance is not rendered a state actor under § 1983 even if the call caused plaintiff's detainment). Plaintiff has alleged no acts demonstrating joint activity; rather, plaintiff merely alleges a conspiracy based "upon information and belief due to some friendship relationship with defendant . . . Lucadomo and/or some other unknown." (Am. Compl. ¶ 9.) Even if Lucadomo's complaint was false, as plaintiff alleges, plaintiff has alleged no facts that would indicate Lucadomo acted in concert with City defendants to file her false complaint. *See Fiske*, 401 F. Supp. 2d at 377 (holding that plaintiff's allegations were insufficient to state a claim for conspiracy under § 1983 where "[a]t most, the plaintiff's allegations . . . could be construed as supporting an inference that [the private actor]

10

attempted to influence the state actors' decision to commit [plaintiff]"). Accordingly, plaintiff's claim of conspiracy pursuant to § 1983 is dismissed.[9]

## 2. Conspiracy Pursuant to § 1985

To state a claim for conspiracy under 42 U.S.C. § 1985, the plaintiff must demonstrate that defendants: (1) engaged in a conspiracy; (2) conspired for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) acted in furtherance of the conspiracy; and (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (citing *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)). Furthermore, to state a claim under § 1985(3), "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Plaintiff has alleged only that defendants engaged in a conspiracy "to keep plaintiff away from his children." (Am. Compl. ¶¶ 63, 66, 75.) Plaintiff's complaint does not attempt to allege racial or other discriminatory animus behind the alleged conspiracy. Thus, plaintiff's allegations fail to support a claim of conspiracy under § 1985(3) and, accordingly, this claim is dismissed.[10]

## D. DELAY IN ARRAIGNMENT

Plaintiff alleges that, after his arrest on May 21, 2006, plaintiff was handcuffed to a hospital bed for five days before he received a bedside arraignment on May 25, 2004. (Am. Compl. ¶¶ 9, 34.) It is unclear whether plaintiff was released from the hospital as soon as he was arraigned or whether he was required to stay in the hospital for further treatment. Construing plaintiff's complaint broadly, as the Court is required to do with *pro se* complaints, the Court finds that plaintiff has stated a Fourth Amendment claim regarding the delay in arraignment. "In *Gerstein v. Pugh*, 420 U.S. 103 (1975), [the

---

[9] Likewise, to the extent plaintiff is attempting to allege a § 1983 action for false arrest and/or malicious prosecution against defendant Lucadomo, those claims must fail because defendant Lucadomo is not a state actor. "A private party may be deemed to have acted under color of law, for purposes of § 1983, if he or she acted jointly with a police officer." *Brown v. City of New York*, No. 98-CV-3844 (GBD), 2004 U.S. Dist. LEXIS 25062, at *29 (S.D.N.Y. Dec. 9, 2004). "[Providing] information to a police officer does not by itself make [defendant] a joint participant in state action under Section 1983." *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (citing *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § [] 1983 . . . .")); *see also* Brown v. City of New York, No. 98-CV-3844 (GBD), 2004 U.S. Dist. LEXIS 25062, at *29 (S.D.N.Y. Dec. 9, 2004) ("Merely reporting a crime to the police is, however, insufficient to establish the requisite joint participation.").

[10] "Liability under § 1986, which permits an action against a person who had the 'power to prevent or aid in preventing the commission of' a wrong 'mentioned in section 1985,' but who 'neglected or refused so to do,' is dependent on the validity of a claim under § 1985." *Dwares v. New York*, 985 F.2d 94, 101 (2d Cir. 1993). Thus, to the extent plaintiff attempts to state a claim under § 1986, the motion to dismiss is also granted in favor of defendants as to that claim.

Supreme] Court held that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest." *Watson v. City of New York*, 92 F.3d 31, 38 (2d Cir. 1996) (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 47 (1991)); *see also Daniels v. City of New York*, No. 03-CV-0809 (GEL), 2004 U.S. Dist. LEXIS 9361, at *8 (S.D.N.Y. May 24, 2004) ("The Constitution does require a prompt judicial determination of probable cause following a warrantless arrest.").

Defendants argue that plaintiff does not allege that his delay in arraignment was due to malice; rather, according to defendants, plaintiff states that the delay was solely a result of his admission to the hospital due to his need for medical treatment. (City Def.'s Letter dated April 25, 2006, Supplementing their Motion Papers (hereinafter "City Def. Supp." at 3.) A delay in arraignment is deemed unreasonable if it is "motivated by ill will against the arrested individual," or if it amounts to "delay for delay's sake." *County of Riverside*, 500 U.S. at 56. However, in *County of Riverside*, the Supreme Court held:

> Where an arrested individual does not receive a probable cause determination within 48 hours . . . the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance.
> Nor, for that matter, do intervening weekends.

500 U.S. at 57. Though plaintiff alleged he required hospitalization and medical attention immediately following his arrest, there were no factual allegations in the complaint indicating extraordinary circumstances that required a delay of four or five days before the bedside arraignment. Although plaintiff did not plead that the delay was a result of ill will, the burden is on the defendants to demonstrate what circumstances required that plaintiff be handcuffed to the bed, without an arraignment, for that extended period. For these reasons, plaintiff's pleadings are sufficient to withstand this motion to dismiss on the issue of whether the delay was procedurally necessary. *See, e.g., Mahase v. City of New York*, No. 96-CV-6105 (EHN), 2000 U.S. Dist. LEXIS 2046, at *11 (E.D.N.Y. Jan. 5, 2000) (denying motion to dismiss a Fourth Amendment claim of delay in arraignment where delay was approximately 30-hours).

## IV. QUALIFIED IMMUNITY

City defendants argue that the § 1983 claims should be dismissed under the doctrine of qualified immunity.[11] Because the Court has granted the motion to dismiss the claims for malicious prosecution and conspiracy, the Court need not address the qualified immunity issue as to those claims, but rather must focus on the false arrest claim. As set forth below, the Court finds that the complaint (and other documents which the Court can properly consider on this motion to dismiss) do not

---

[11] Defendants do not move at this time to dismiss the claims for unlawful seizure, excessive force, or the delay in arraignment on grounds of qualified immunity.

provide a sufficient basis at this juncture for the Court to determine whether City defendants are entitled to qualified immunity. Thus, the motion to dismiss on such grounds is denied without prejudice to renew such motion at the summary judgment stage.

The doctrine of qualified immunity shields government officials from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (*quoting Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (quotation omitted)). Thus, qualified immunity is not merely a defense, but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the availability of qualified immunity should decided by a court "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

When analyzing qualified immunity in the context of a suit for damages based on an arrest allegedly without probable cause, a police officer is immune from such suit "'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Posr*, 180 F.3d at 416 (quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991)). The Second Circuit has defined this standard, which is often referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable.

*Cerrone v. Brown,* 246 F.3d 194, 203 (2d Cir. 2001) (quotations and citations omitted). Moreover, under that standard, "an 'arresting officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met.'" *McCllellan*, 439 F.3d at 147-48 (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)).

The Second Circuit has emphasized that "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). More specifically, "[n]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.*

13

(internal citations and quotation marks omitted). In addition, in such situations, "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id*.

In the instant case, plaintiff's complaint alleges various violations of his constitutional rights, including that defendants arrested him without probable cause. Therefore, the question at this juncture is whether it was objectively reasonable for the individual defendants to believe that probable cause existed to arrest plaintiff, or whether officers of a reasonable competence could disagree as to the existence of probable cause. In particular, plaintiff alleges that, based on the information supplied by him and their own investigation, defendants were put on notice as to the falsity of Lucadomo's complaint and her habit of making such false allegations and that defendants ultimately arrested him without probable cause.

Although defendants dispute these allegations and argue that they are entitled to qualified immunity, there is simply insufficient information at this early stage to determine whether the conduct of the individual officers in this case is protected by qualified immunity. As a threshold matter, as noted *supra* in connection with the probable cause analysis, there is insufficient information in the complaint from which to determine what facts the police officers had available to them from the complainant at the time of the arrest. *See, e.g., McClellan*, 439 F.3d at 148-49 (holding that "there is nothing in the present record to indicate whether 'reasonable officers would disagree' as to the propriety of [the officer's] actions" and reversing district court's grant of summary judgment); *Cornett*, 2006 U.S. Dist. LEXIS 22415, at *39 (denying summary judgment on qualified immunity grounds where the statement to the officer "which presumably prompted plaintiff's arrest is not in evidence" and "[o]n this record it is impossible to determine whether [the officer's] actions were reasonable").

Moreover, even assuming the arresting officers had all the information available to them that was later contained in the criminal complaint filed after the arrest, the Court is still unable to conclude at this juncture that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. It is possible that plaintiff, through discovery, could demonstrate the defendants were aware of certain other facts at the time of arrest – including information he provided to the police prior to the arrest suggesting that the complaining witness was lacking in any credibility, combined with whatever additional information the police learned during the months that passed between the initial complaint and the arrest – such that no officer of reasonable competence could believe the probable cause test was met. Of course, it is also possible that the defendants will be able demonstrate through discovery that (1) at a minimum, arguable probable cause existed based on Ms. Lucadomo's initial complaint; and (2) nothing plaintiff told the police or the police uncovered during their own investigation undermined that arguable probable cause.

In sum, although the Court is sensitive that the qualified immunity issue should be decided at the earliest possible juncture, the facts in the instant case, as alleged by the plaintiff, do not provide a sufficient basis from which the Court can make that determination as a matter of law in this case at

the motion to dismiss stage.[12] *See Posr*, 180 F.3d at 416 (finding insufficient factual basis to grant motion to dismiss on qualified immunity grounds); *Caidor*, 2006 U.S. Dist. LEXIS 22980, at *53 (denying motion to dismiss on qualified immunity grounds with leave to renew because "at this juncture, the complaint provides insufficient facts to make a determination regarding this issue"); *see also Castro v. United States,* 34 F.3d 106, 112 (2d Cir. 1994) ("Although a defense of qualified immunity should ordinarily be decided at the earliest possible stage in litigation . . . some limited and carefully tailored discovery may be needed before summary judgment will be appropriate.") (internal citations and quotations omitted). Accordingly, City defendants' motion to dismiss the false arrest claim on the basis of qualified immunity is denied.

## V. SUPERVISORY DEFENDANT RICHARD

City defendants move to dismiss the claims against defendant Richard based on Richard's lack of personal involvement in the arrest of plaintiff and the complete absence of any such allegations of personal involvement by plaintiff. (City Def. Memo. at 16.) "It is well settled in [the Second Circuit] that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffit v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Furthermore, "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

Plaintiff's only allegation in response to defendants' motion to dismiss as to Richard is that, "[o]n or about January 20th 2004 . . . commanding officer inspector Richard was notified that one of his detectives, codefendant Lyons was not following proper police procedures." (Pl. Opp. at ¶ 7.[13]) Though plaintiff does not cite to any support for this notification, the notification to which plaintiff is presumably referring is a brief January 20, 2006 letter, sent by Eisenstein to Richard, expressing concern about "police policies, standards, and procedures that allow officers to refuse to accept information related to ongoing investigations" and requesting that a copy of the policy and procedure be forwarded to him. (Am. Compl. App. B-1.) Eisenstein sent a second letter to Richard on January 30, 2004, inquiring about the investigation of plaintiff. (Am. Compl. App. A-1, B-2.) Plaintiff also wrote letters on February 15, 2004, March 24, 2004, and March 27, 2004, to Commissioner Raymond Kelly on which he copied defendant Richard and noted Richard's failure to respond to earlier correspondence. (Am. Comp. App. C, D, and H.) No other allegations regarding defendant Richard appear in the complaint or in plaintiff's opposition papers. Plaintiff's only allegations regarding Richard appear to be for a failure to supervise.

---

[12] As noted above, in reaching this decision, the Court has relied on the complaint itself and other documents which the Court can rely on for purposes of a motion to dismiss, including documents annexed to the complaint in the instant case, as well as the criminal complaint filed in state court against plaintiff.

[13] Plaintiff's opposition to city defendants' motion contains two paragraphs labeled number seven. This reference is to the first paragraph numbered seven.

The alleged facts here are closely analogous to those in in *Sealy v. Giltner*, 116 F.3d 47 (2d Cir. 1986). In *Sealy*, the plaintiff had written two letters to supervisor Coughlin. 116 F.3d at 51. The supervisor referred the first letter to another defendant for a decision, and responded to the second letter by informing the plaintiff that a decision was rendered by a separate defendant. *See id.* The district court held, and the Second Circuit affirmed, that plaintiff's two letters and the supervisor's response "[did] not demonstrate the requisite personal involvement" by the supervisor and granted summary judgment, dismissing the claims against him. *Id.* As in *Sealy*, the only involvement of defendant Richard alleged by plaintiff is the receipt of several letters, either directed to him individually or directed to Commissioner Kelly and copying Richard, and a failure to respond. The Court finds that the receipt of these letters and lack of response does not demonstrate personal involvement by Richard in the alleged constitutional deprivations.

A supervisor may not be held liable under § 1983 under a *respondeat superior* theory. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) ("A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort."). However, absent personal involvement, a supervisor may be still be held liable "for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury." *Id.*

Plaintiff argues that Richard's failure to act on the letters demonstrates deliberate indifference and that Richard was grossly negligent in his failure to supervise. The issue, however, is whether defendant Richard knew there was a high degree of risk that defendant Lyons would seek the arrest of plaintiff without probable cause. *See Poe*, 282 F.3d at 140 ("We have often equated gross negligence with recklessness, and have defined it as the 'kind of conduct . . . where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.'") (quoting *Bryant v. Maffucci*, 923 F.2d 979, 985 (2d Cir. 1991)) (citations omitted). The letters allegedly received by Richard requested information and expressed plaintiff's concern that the allegations against plaintiff were not being properly investigated. Plaintiff has alleged no pattern of arrests without probable cause by defendant Lyons. Therefore, plaintiff has failed to state a claim that Richard is liable under § 1983.

Furthermore, even if this Court concluded that Richard's inaction violated clearly established federal law, he is entitled to qualified immunity because his inaction was not objectively unreasonable. *See Poe*, 282 F.3d at 146 (finding defendant entitled to qualified immunity even if his actions violated clearly established law because the conduct was not objectively unreasonable). Taking all of plaintiff's facts as true, reasonable officers in Richard's position could disagree as to the legality of his failure to act on the letters. Thus, Richard is entitled to qualified immunity. *See Poe*, 282 F.3d at 146 (holding that a supervisor was entitled to qualified immunity despite his failure to review the personal histories of his subordinates).

Accordingly, the motion to dismiss the claims against defendant Richard is granted.

## VI. MUNICIPAL LIABILITY

City defendants move to dismiss the claim of municipal liability against the City of New York. The Supreme Court expressly rejected liability pursuant to a theory of *respondeat superior* for purposes of § 1983 in *Monell*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a muncipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Thus, "[a] municipality will not be held liable under Section 1983 unless the plaintiff can demonstrate that the allegedly unconstitutional action of an individual law enforcement official was taken pursuant to a policy or custom 'officially adopted and promulgated by that [municipality's] officers.'" *Abreu v. City of New York*, No. 04-CV-1721 (JBW), 2006 U.S. Dist. LEXIS 6505, at *11 (E.D.N.Y. Feb. 22, 2006) (quoting *Monell,* 436 U.S. at 690.) "[M]unicipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986)). An individual's misconduct will not result in *respondeat superior* liability for his supervisors absent specific allegations that he acted pursuant to an official policy or custom. *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). However, "[a] court may draw the inference of the existence of a policy or custom 'when a plaintiff presents evidence that a municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction. . . .'" *Caidor*, 2006 U.S. Dist. LEXIS 22980, at *35-36 (quoting *Griffin-Nolan v. Providence Wash. Ins. Co.*, No. 04-CV-1453 (FJS/GJB), 2005 U.S. Dist. LEXIS 12902, *10 (N.D.N.Y. June 20, 2005) (quotation omitted)). But, "'the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

In order to survive a motion to dismiss, "the plaintiff's complaint must contain specific factual allegations tending to support the inference that the municipality failed to train its employees. Generally, allegations of a single, isolated incident of police misconduct will not suffice." *Aguilera v. County of Nassau*, No. 05-CV-4002 (ADS) (ARL), 2006 U.S. Dist. LEXIS 14992 (E.D.N.Y. March 27, 2006) (citing *City of Canton*, 489 U.S. at 387); *see also McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 401 (S.D.N.Y. 2005) ("An allegation that a municipality was 'deliberately indifferent' to the need to train, monitor, or supervise its employees, without alleging any facts beyond the specific instance giving rise to his complaint, generally fails to adequately to [sic] plead a custom or policy on the part of the municipality.")); *Peterson v. Tomaselli*, No. 02-CV-6325 (RJH), 2004 U.S. Dist. LEXIS 19765 (S.D.N.Y. Sept. 30, 2004) (stating "the City cannot be held liable under § 1983 on the basis of [an individual's] actions absent any specific allegations that [the individual] acted pursuant to an official municipal policy or that his superiors' failure to train him caused [plaintiff's] constitutional deprivation").

The amended complaint does not allege

17

any facts suggesting a custom or policy by the City. Plaintiff's complaint merely recites that the City of New York and other defendants "faile[ed] to properly train, supervise[], and keep . . . members of the police department aware of the current change in the law that effect their current policies and practices . . . ." (Am. Compl. at ¶ 6; *see also* Am. Compl. at ¶¶ 7, 8, 36.) When viewing the alleged facts in a light most favorable to plaintiff, the complaint fails to allege even minimal facts from which it can be inferred that the plaintiff's alleged constitutional violation was the result of a City custom or policy or the result of the City's failure to train its officers. There is likewise no evidence to suggest that policymaking officials constructively acquiesced in allowing the continuation of the alleged actions. "Without any basis in fact, these unsupported conclusions of law are insufficient to state a claim." *Aguilera*, 2006 U.S. Dist. LEXIS 14992, at *11; *see also Sylla v. City of New York*, No. 04-CV-5692 (ILG), 2005 U.S. Dist. LEXIS 31817 (E.D.N.Y. Dec. 8, 2005) ("In the absence of any specific allegations, plaintiff has not pleaded facts on which the Court can infer that the municipality bears any culpability for the officers acts, or that the training program in any way caused plaintiff's injuries.").

Accordingly, the claims against the City of New York are dismissed.

## VII. STATE LAW CLAIMS AGAINST CITY DEFENDANTS

City defendants contend that plaintiff's pendent state law claims against the City defendants must be dismissed for failure to file a Notice of Claim pursuant to New York General Municipal Law Sections 50-e and 50-i. *See Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (holding that in federal court, state notice-of-claim statutes apply to state law claims). Plaintiff does not dispute defendants' assertion that a Notice of Claim was not filed for any of his state law claims; rather, plaintiff argues that defendants should be estopped from arguing that plaintiff's failure to file a notice of claim requires dismissal of any of his claims. (Pl.'s Letter dated May 17, 2006 responding to City Def. Supp., at 1.)

Sections 50-e and 50-i require a party asserting a state law tort claim against a municipal entity or its employees acting in the scope of their employment to file a notice of claim within ninety days of the incident giving rise to the claim and requires the plaintiff to commence the action within a year and ninety days from the date on which the cause of action accrues. *See* N.Y. GEN. MUN. LAW §§ 50-e, 50-I. "Under New York law, notice of claim is a statutory precondition to filing suit against the City or its employees." *Harris v. Bowden*, No. 03-CV-1617 (LAP), 2006 U.S. Dist. LEXIS 12450, at *22 (S.D.N.Y. March 23, 2006). "A plaintiff's failure to file a notice of claim requires dismissal of pendent state tort claims against the City or its employees in a federal civil rights action." *Robinson v. Matos*, No. 97-CV-7144 (TPG), 1999 U.S. Dist. LEXIS 5447, at *3 (S.D.N.Y. April 19, 1999) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)).

Furthermore, the Court does not have jurisdiction to allow plaintiff to file a late notice of claim. *Corcoran v. N.Y.Power Auth.*, No. 95-CV-5357 (DLC), 1997 U.S. Dist. LEXIS 14819, at *19 (S.D.N.Y. Sept. 26, 1997); *see also* N.Y. GEN. MUN. L. § 50(e)(7) ("All applications under this section shall be made to the supreme court or to the county court . . ."). Accordingly, City defendants' motion to dismiss plaintiff's state

18

law claims, including fraud, fraud by omission, abuse of process, official misconduct, perjury and intentional infliction of emotional distress, is granted.[14] *See Gonzalez v. City of New York*, No. 94-CV-7377 (SHS), 1996 U.S. Dist. LEXIS 5942, at *5-6 (S.D.N.Y. May 3, 1996) ("Despite the statute's seemingly plain language, it applies not only to suits against municipal corporations but also to suits against 'officer[s], agent[s] or employee[s]' whose conduct has caused injury.").

VIII. CLAIMS AGAINST DEFENDANT LUCADOMO

As stated *infra*, plaintiff's federal claims against defendant Lucadomo are dismissed. The only remaining claims against defendant Lucadomo are state law claims for slander, libel, intentional infliction of emotional distress, abuse of process, malicious prosecution, fraud, fraud by omission, perjury and harassment.[15] The Court declines to exercise jurisdiction over these state law claims. *See Valencia v. Sung M. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine– judicial economy, convenience, fairness, and comity– will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *see also Castellano v. Bd. of Trustees of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir. 1991) ("'Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims.'") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). Accordingly, because the Court dismissed the federal claim against defendant Lucadomo, plaintiff's state law claims against defendant Lucadomo are also dismissed without prejudice to plaintiff seeking to bring those claims in state court.

---

[14] Plaintiff is correct, however, that plaintiff's failure to comply with the New York Notice of Claim requirement does not affect plaintiff's ability to pursue his claims under § 1983. *See Ahern v. Neve*, 285 F. Supp. 2d 317, 321 (E.D.N.Y. 2003) ("While the notice of claims requirement applies to state-based claims, it does not apply to actions brought pursuant to Section 1983.").

[15] This list of claims against defendant Lucadomo may be over-inclusive because it is difficult to discern from the complaint which state law claims are alleged against the City defendants and which state law claims are alleged against defendant Lucadomo. Construing the complaint liberally, the Court will assume plaintiff is seeking to assert all of these state claims against Lucadomo.

## IX. CONCLUSION

The motion to dismiss all claims against defendants Richard and the City of New is GRANTED. The motion to dismiss all federal claims against defendant Lucadomo is GRANTED and the Court declines to exercise jurisdiction over the state law claims against defendant Lucadomo. With respect to individual City defendants Lyons, Barone, and Mahoney, (1) the motion to dismiss the § 1983 claims of malicious prosecution and conspiracy, and the § 1985 claim of conspiracy, is GRANTED, (2) the motion to dismiss the § 1983 false arrest/false imprisonment claim and Fourth Amendment claim of delay in arraignment is DENIED, and (3) the motion to dismiss all state law claims is GRANTED. The unlawful seizure and excessive force claims, which were not the subject of the instant motion, also remain.

The parties are ordered to contact Magistrate Judge Bloom's chambers to proceed with discovery.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 19, 2006
Central Islip, NY

\* \* \*

The plaintiff appeared *pro se.* The attorney for city defendants is Mona Vivian Najib, Esq., New York City Law Department, 100 Church Street, New York, NY 10007. The attorney for Claire Lucadomo is Chaim T. Steinberger, Esq., Chaim Steinberger, PC, 1586 E. 14th Street, Brooklyn, NY 11230.